# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MAGRUDER CONSTRUCTION CO., INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 4:18-CV-00286 JAR |
| PHILIP GALI, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Magruder Construction Co., Inc. ("Magruder")'s Motion for Summary Judgment on Count I of the Complaint and First Claim for Relief in the Counterclaim and Partial Summary Judgment on Count II of the Complaint. (Doc. No. 28). The motion is fully briefed and ready for disposition. For the following reasons, the motion will be granted.

**I.    Background**

Magruder is a construction company with its principal place of business in Pike County, Missouri. On December 28, 2012, Defendant Philip Gali ("Gali") acquired control of Magruder and assumed the positions of Chief Executive Officer, President, Secretary, and Treasurer, as well as sole Director of the Board of Directors and sole Trustee of the Employee Stock Ownership Trust ("ESOT"). Under Gali's direction, Magruder adopted the Magruder Construction Co., Inc. Deferred Compensation Plan ("the Plan"), effective January 1, 2013. The plan is an unfunded deferred compensation plan, the purpose of which is "to provide a select group of key management or highly compensated employees … of the Company who contribute significantly to the future

business success of the Company with supplemental retirement income benefits through discretionary Company contributions." (Plan at Sections 1-2.)

The Plan is administered by Magruder, through its Board of Directors. (Plan at Section 9.1). The Board has the authority to "construe and interpret the Plan and apply its provisions," "interpret, administer, reconcile any inconsistency in, correct any defect in and/or supply any omission in the Plan," and "exercise discretion to make any and all other determinations which it determines to be necessary or advisable for the administration of the Plan." (Plan at Sections 9.1(a), (g), (h)). The Plan further provides that "all decisions made by the Board pursuant to the provisions of the Plan shall be final and binding on the Company and the Participants, unless such decisions are determined by a court having jurisdiction to be arbitrary and capricious." (Plan at Section 9.3).

The Plan provides that a participant's account shall become vested upon, *inter alia*, a "Change in Control." (Plan at Sections 3, 7.1(a)). According to the Plan, a "Change in Control" occurs, for example, when "a majority of the members of the Board are replaced during any twelve (12) month period by directors whose appointment or election is not endorsed by a majority of the Board before the date of the appointment or election." (Plan at Sections 3, 7.1(a)). If a Participant terminates employment prior to a Change in Control, he or she forfeits the balance in his or her Account balance. (Plan at Section 7.1(a), 7.2).

On July 2, 2013, Gali, acting as the sole Director of the Board, issued a discretionary contribution under the Plan in the amount of $286,490 to himself for his performance from December 28, 2012 to March 31, 2013 to be credited to his account.

On April 28, 2014, Bank of America, N.A. ("BOA") filed a lawsuit against Magruder in this Court, Bank of America, N.A. v. Magruder Construction Co., Inc., Case No. 4:14-CV-809 JAR (E.D. Mo.) (the "BOA Lawsuit"), alleging that Magruder had defaulted on a $3,400,000 loan

(the "BOA Lawsuit").[1] In the BOA Lawsuit, the Receiver and BOA accused Gali of mismanagement and improper business practices, including depositing approximately $70,000 in checks made payable to himself as "back pay." (Ex. 4, BOA Lawsuit Court File, at Doc #69 at 1-3, Doc. #79 at 2-3, Doc #116 at 6-8)

On July 21, 2014, the Court appointed a Receiver to take control of, operate, and/or liquidate Magruder's collateral. On August 11, 2014, due to Gali's failure to comply with the Receiver's instructions, the Receiver terminated Gali as an employee and officer of the Company effective immediately. On September 23, 2014, Magruder, under Gali's direction, asked the Court in the BOA Lawsuit to enter an order directing the Receiver to rescind the termination of Gali. The Court denied this request.

The previous owners/note holders of Magruder ("Note Holders"), as well as the Employee Stock Ownership Plan participants ("ESPO Participants"), subsequently intervened in the BOA Lawsuit to protect their respective interests. In November 2014, Magruder, Gali, the Note Holders, and the ESOP Participants engaged in extensive settlement negotiations. Counsel for Magruder represented Gali's interests during these settlement negotiations.

On December 15, 2014, Magruder, Gali, and the ESOP Participants entered into a written Mutual Release and Settlement Agreement (the "Settlement Agreement"). (Doc. No. 31-1). The Settlement Agreement states in relevant part that "since the filing of the [BOA Lawsuit], disputes have arisen between the Parties relating to the management of the Company and the ESOT as well

---

[1] Magruder requests the Court take judicial notice of the entire BOA Lawsuit court file for purposes of establishing the facts and circumstances that existed between the parties at the time they entered into the Settlement Agreement. (Doc. No. 56). No opposition having been filed, the Court will grant Magruder's motion. See United States v. Jackson, 640 F.2d 614, 617 (8th Cir. 1981) (citations omitted) (district court may take judicial notice of its own records and files and facts that are part of its public records; judicial notice is particularly applicable to the court's own records of prior litigation related to the case before it).

as the selection of the appropriate refinancing alternatives available to the Company to pay the Bank in full, obtain the discharge of the Receiver and to have the Lawsuit dismissed"; that "a commitment for a loan from Heartland Bank has been obtained to fund the full repayment to BOA as well as additional sums for use by the Company (the "New Loan"), which Loan is scheduled to close on or before December 22, 2014 (the "Closing Date")"; that in connection with the New Loan, certain management changes at the Company and for the ESOT shall occur, including the naming of successors to Gali as an officer, director CEO and as Trustee of the ESOT and a payment by the Company to Gali of $350,000.00 …"; and that the Parties are desirous of resolving all disputes between them and are entering into this Mutual Release and Settlement Agreement to memorialize that resolution."

Under the Settlement Agreement, Gali agreed to "execute a resignation effectively immediately as Director of the Board of Directors of the Company and as Trustee of the ESOT and thereafter shall take whatever actions as may be necessary to fully cooperate in the appointment of one or more successor directors of the Board of Directors and to fully cooperate in connection with the appointment of one or more successor trustees of the ESOT." Gali also agreed to relinquish his vested and unvested ESOP shares and take whatever actions may be necessary to fully redeem his ESOP share holdings. As consideration for his agreement to resign and voluntarily relinquish his ESOP shares, Gali was paid the total sum of $350,000 (the "Settlement Payment").

Paragraph 6 of the Settlement Agreement states:

As a material provision to this Agreement, to the best of Gali's knowledge, all actual or potential liabilities of the Company resulting from company operations from December 1, 2012 and all actual and potential liabilities of the ESOP or ESOT, have been disclosed by Gali, which are either known to him or with diligence could have been known, and there are no other such known claims or debts that were incurred during the period that Gali held the position as Chief Executive Officer, President, Secretary, and/or Treasurer of the Company, and/or Director of the Board of Directors of the Company.

Paragraph 7 of the Settlement Agreement provides that the parties will not maintain or cause to be maintained "any demands, actions, lawsuits, arbitrations, or any other proceedings against the other in any capacity whatsoever as a result of or pertaining to the claims released and discharged herein."

The Settlement Agreement contains a mutual release, which was signed by Gali on December 30, 2014. In this mutual release, Gali released and discharged Magruder and the ESOP Participants from:

> all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, which arise from or relate to the general operations and/or management of Magruder Construction Co., Inc., from December 1, 2012 through and including the date of execution hereof, and Gali's services as Trustee of the ESOT, from April 1, 2012 through and including the date of execution hereof. This mutual release specifically excepts the obligations undertaken by each party pursuant to this Agreement.

The Settlement Agreement further provides that in the event it is necessary for a party or its authorized representative to hire an attorney to resolve any dispute hereunder, including but not limited to the institution of a lawsuit, the party which hired such an attorney and prevails shall be entitled to reimbursement of its full reasonable costs, expenses, and attorneys' fees incurred.

On December 22, 2014, the Receiver filed a consent motion requesting the authority to appoint new corporate directors and for the new corporate directors to execute the refinancing documents. Counsel for Magruder signed this motion, consenting to its entry and agreeing to be bound by the terms of the order. This Court granted the motion the same day.

By letter to Magruder's Board of Directors dated August 14, 2017, Gali, represented by new counsel, demanded $289,490 in deferred compensation benefits under the Plan and another $118,725.61 for his outstanding salary and benefits accrued between August 3, 2014 and

December 30, 2014, for a total of $405,214.61. Magruder denied Gali's claims on September 1, 2017, and informed Gali's new counsel of the BOA Lawsuit, the Settlement Agreement, and the Receiver's termination of Gali's employment. By letter dated October 21, 2017, Gali requested a formal Notice of Denial letter under Paragraph 12.3 of the Plan.

On November 10, 2017, Magruder issued its formal Notice of Denial setting forth in detail the basis of its denial, i.e., (1) that Gali released his claim as part of the Settlement Agreement with Magruder; (2) that there was no Change in Control of Magruder that would have caused benefits he might have accrued to vest; and (3) that Gali forfeited any benefits he might have accrued under the Plan when his employment was terminated by the Receiver in August 2014. Gali served a written request for appeal on December 14, 2017. On February 12, 2018, Magruder denied Gali's appeal for the same reasons provided in its initial denial letter.

Magruder filed this action on February 20, 2018 seeking, among other things, a declaration of the rights and obligations of the parties in relation to the Settlement Agreement reached by the parties in December 2014 in the "BOA Lawsuit". Specifically, Magruder seeks a declaration that it has no obligation to pay any deferred compensation, salary, or other benefits to Gali. Magruder also seeks damages it has incurred from Gali's breach of the Settlement Agreement and an order enforcing the Agreement.

On July 25, 2018, Gali filed a counterclaim asserting two claims for relief: benefits due under 29 U.S.C. § 1132(a)(1)(B) of ERISA (First Claim for Relief); and nonpayment of wages and benefits related to work he allegedly performed for Magruder between August 11, 2014 and December 30, 2014 (Second Claim for Relief). On December 10, 2018, the Court dismissed Gali's Second Claim for Relief for nonpayment of wages and benefits for failure to provide any legal basis for recovery. Magruder now moves for summary judgment on Count I of its complaint and

Gali's First Claim for Relief in his counterclaim as well as partial summary judgment on Count II of its complaint.

## II.     Legal standards

### A.  Summary judgment

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.[2] Fed. R. Civ. P. 56(e).

### B.  ERISA standard of review

The first step in evaluating a denial of benefits claim under ERISA is determining the appropriate standard of review. A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where the plan administrator has such discretionary authority, judicial review is limited to an abuse-of-discretion standard. Id.

---

[2] ERISA confers no right to a jury trial, so the Court would be the factfinder in the event of trial. See Houghton v. SIPCO, Inc., 38 F.3d 953, 957 (8th Cir. 1994).

The parties disagree as to the standard of review this Court is to apply in reviewing the denial of benefits. Magruder argues that an abuse-of-discretion standard applies because the Plan expressly grants the Board the authority to "construe and interpret the Plan and apply its provisions," "interpret, administer, reconcile any inconsistency in, correct any defect in and/or supply any omission in the Plan," and "exercise discretion to make any and all other determinations which it determines to be necessary or advisable for the administration of the Plan." (Plan, Section 9.1(a), (g), (h)). The Plan further provides that "all decisions made by the Board pursuant to the provisions of the Plan shall be final and binding on [Magruder] and the Participants, unless such decisions are determined by a court having jurisdiction to be arbitrary and capricious." (Section 9.3).[3]

Gali argues that de novo review is required because the Board failed to perform the duties of a plan administrator as required by ERISA. In particular, Gali asserts that the Board failed to supply a plan summary pursuant to 29 U.S.C. §§ 1022, 1024; failed to provide an annual report pursuant to 29 U.S.C. §§ 1023, 1024; and never communicated to him that he was being ejected from the Plan or that his participant account was forfeited.

In reply, Magruder asserts that because the Plan is a "top hat" plan, it is exempted from ERISA's substantive provisions. A top hat plan is a plan that is unfunded, and used by employers to provide "deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. §§ 1051; see also Emenegger v. Bull Moose Tube Co., 197 F.3d 929, 932

---

[3] The Eighth Circuit has explained that in this context, the terms "abuse of discretion" and "arbitrary and capricious" are interchangeable. Jackson v. Prudential Ins. Co. of America, 530 F.3d 696, 701 n.6 (8th Cir. 2008).

n.6 (8th Cir. 1999). These plans are exempt from the participation, vesting, funding, and fiduciary provisions of ERISA.[4]

Under Eighth Circuit law, the standard of review in a top hat plan case is de novo, even when the plan gives its administrator discretionary authority to interpret the plan, because "a top hat administrator has no fiduciary responsibilities" under ERISA. Craig v. Pillsbury Non-Qualified Pension Plan, 458 F.3d 748, 752 (8th Cir. 2006) (quoting Goldstein v. Johnson & Johnson, 251 F.3d 433, 443 (3d Cir. 2001)). The Eighth Circuit explains that top hat plans are treated as "unilateral contracts" and reviewed in accordance with ordinary contract principles. Craig, 458 F.3d at 752. Ordinary contract principles require that, where one party is granted discretion under the terms of the contract, that discretion must be exercised in good faith – a requirement that includes the duty to exercise the discretion reasonably. Thus, de novo review of a benefits determination under a top hat plan ultimately requires a determination of whether the plan's decision was reasonable. Id.; Goldstein, 251 F.3d at 444 ("As with any other contract term, courts retain the authority to conduct a de novo review as to whether a party has complied with its good-faith obligations."). In Bender v. Xcel Energy, Inc., 507 F.3d 1161, 1167 (8th Cir. 2007), the Eighth Circuit again noted that review was de novo, but that the review was "for reasonableness, a deferential standard." Id.

In sum, the Court concludes that de novo review for reasonableness, as set forth in Craig and Bender, will be applied in this case. Gilbert v. Greater St. Louis Auto. Ass'n Inc., No. 4:12CV00754 AGF, 2012 WL 5994282, at *3 (E.D. Mo. Nov. 30, 2012). The test for reasonableness depends upon the administrator's basis for denial. DaPron v. Spire, Inc. Ret. Plans

---

[4] The assumption underlying the top hat exemption from ERISA is simply that top-level executives are in a favorable bargaining position to negotiate the terms of an agreement and, therefore, do not need a comprehensive regulatory scheme, like ERISA, to protect their interests. Van Gent v. Saint Louis Country Club, No. 4:08CV959 FRB, 2013 WL 6198122, at *8 (E.D. Mo. Nov. 27, 2013) (citation omitted).

Comm., 377 F. Supp. 3d 946, 958 (E.D. Mo. 2019) (citation omitted). "An administrator's decision is upheld if it is reasonable, that is, supported by substantial evidence ... [which] means more than a scintilla but less than a preponderance." Id. (quoting Silva v. Metro. Life Ins. Co., 762 F.3d 711, 717 (8th Cir. 2014)). Ultimately, "[t]he requirement that the plan administrator's decision be reasonable should be read to mean that a decision is reasonable if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." Id. (quoting Green v. Union Sec. Ins. Co., 646 F.3d 1042, 1050 (8th Cir. 2011)).

### III. Discussion

#### A. Count I of complaint and first claim for relief in counterclaim

Magruder argues it is entitled to summary judgment because Gali released his claim for deferred compensation as part of the Settlement Agreement and because his account was either forfeited when his employment was terminated or not fully vested. In response, Gali argues that the Settlement Agreement was intended only to resolve claims arising from the BOA Lawsuit and that his claim for deferred compensation was not included. Gali further argues that his deferred compensation account fully vested because he did not "terminate" his employment with Magruder and because under the terms of the Plan, a Change in Control occurred.

Gali frames the issue at the heart of this litigation as follows: "what claims are released by the Settlement Agreement?" (Doc. No. 50 at 5). The interpretation of a release or settlement agreement is governed by the same principles applicable to contractual agreements, and the primary goal is to enforce the parties' intended agreement. Andes v. Albano, 853 S.W.2d 936, 941 (Mo. 1993) (citations omitted); see also Cromeans v. Morgan Keegan & Co., 859 F.3d 558, 565 (8th Cir. 2017). "Any question regarding the scope and extent of the release is to be resolved

according to what may fairly be said to have been within the contemplation of the parties at the time the release was given. This, in turn, is to be resolved in light of all the surrounding facts and circumstances under which the parties acted." Andes, 853 S.W.2d at 941 (citations omitted). However, language that is plain and unambiguous on its face will be given full effect within the context of the agreement as a whole unless the release is based on fraud, accident, misrepresentation, mistake, or unfair dealings. Id.

Magruder asserts that the Settlement Agreement clearly reflects the parties' intent to resolve all disputes between them, including Gali's claim for deferred compensation, as evidenced by the broad language of the general release of "all known and unknown claims." Gali, on the other hand, argues that the parties' intent was to resolve only claims arising from the BOA Lawsuit, see Settlement Agreement at ¶ 7 ("The intention of the parties is to fully, completely and forever settle, compromise, release and discharge all claims released herein against the other relating to or arising out of the [BOA] Lawsuit …"), and that the Settlement Agreement did not mention the Plan or deferred compensation because it was not at issue in the BOA Lawsuit.

Gali's attempt to limit the scope of the Settlement Agreement is not supported by the record. When read as a whole, the Settlement Agreement clearly and unambiguously reflects the parties' intent to resolve all disputes between them in light of the facts and circumstances at the time of contracting. In the BOA Lawsuit, Magruder was facing liquidation unless the parties could reach an agreement on a financing proposal. Two competing proposals were submitted to the court-appointed Receiver for evaluation. The Receiver found the transaction with Heartland Bank superior to the other proposal; however, as a material condition for financing, Heartland Bank required that Gali be removed as a Director of the Company and Trustee of the ESOT and "have no further involvement" with Magruder. The parties eventually agreed to proceed with the

Heartland Bank transaction. As consideration for his resignation and relinquishment of his ESOP shares, Gali was paid $350,000. The parties filed a Notice of Settlement on November 19, 2014 and entered into the Settlement Agreement on December 15, 2014. The Settlement Agreement explicitly states that the parties "are desirous of resolving *all disputes* between them and are entering into this Mutual Release and Settlement Agreement to memorialize that resolution." (emphasis added) (Settlement Agreement at 4).

The parties' intent to resolve all disputes and claims between them is further evidenced by their mutual release, which was the product of extensive negotiations between parties with equal bargaining power and ready access to counsel. (Settlement Agreement at ¶ 20). Gali released and discharged Magruder from "all known and unknown claims, liabilities, obligations, promises, agreements, rights, demands, debts, of any nature whatsoever," which "arise from or relate to the general operations and/or the management of [Magruder] from December 1, 2012 through and including the date of execution." (Settlement Agreement at 15). It is well established that a general release of "any and all" or "all known and unknown" claims is sufficient to encompass an ERISA claim even though it is not specifically mentioned in the release or settlement agreement. See Chaplin v. NationsCredit Corp., 307 F.3d 368, 372-73 (5th Cir. 2002) (there is no requirement that a release mention ERISA to bar a cause of action under ERISA); see also Stanley v. George Washington Univ., 394 F. Supp. 3d 97, 107-08 (D.D.C. 2019) (collecting cases). The Court therefore finds and concludes that the Mutual Release and Settlement Agreement is clear and unambiguous and releases all known and unknown claims between the parties, including Gali's claim for deferred compensation benefits.

To the extent Gali is suggesting the language of the release is ambiguous, the parties' intent can be discerned from their settlement negotiations in the BOA Lawsuit. A series of emails

exchanged between the parties clearly show that Gali's claim for deferred compensation was part of their discussions, as it represented a large part of his demand. In an email dated November 11, 2014, counsel responded to Gali's settlement demand for $435,000, which included $286,000 in deferred compensation. Counsel discussed Gali's demand for deferred compensation at length and tendered a counteroffer in the amount of $71,500, which represented 25% of Gali's deferred compensation figure. While subsequent emails did not specifically reference deferred compensation, the parties continued to negotiate a settlement amount, the basis of which remained the same, i.e., Gali's claim for deferred compensation. On November 18, 2014, counsel reminded Gali's counsel that "any claim on deferred compensation is worthless upon dissolution and liquidation of the company." On December 15, 2014, the day the Settlement Agreement was executed, Gali's counsel stated Gali's position that "a payment of [$350,000] at closing is the best way for each of the parties to rid themselves of each other and be able to go forward without dealing [with] each other on any level." The Court believes these communications support its conclusion that the $350,000 payment was intended by both parties to resolve Gali's demand for deferred compensation.

For these reasons, the Court finds the Board's decision to deny Gali's claim for deferred compensation was supported by substantial evidence. Having determined that Gali released his claim to deferred compensation benefits by executing the Settlement Agreement, the Court need not address Magruder's remaining arguments that Gali's account was forfeited or not fully vested.

### B. Count II of the complaint

Magruder asserts it is entitled to partial summary judgment on its claim for breach of contract in Count II of the complaint because the undisputed facts show that the Settlement

Agreement is a valid, binding and enforceable contract; that it performed its contractual obligation by paying Gali $350,000; and that Gali breached the terms of the Settlement Agreement first by asserting and maintaining his demands for deferred compensation and back pay in violation of Paragraph 7 and then by bringing a counterclaim alleging these claims. Gali does not dispute that the Settlement Agreement is a valid and binding contract; rather, he contends that the Settlement Agreement did not encompass his claims.

As discussed above, the evidence shows that Gali agreed to release all claims for benefits when he entered into the Settlement Agreement. Therefore, by maintaining his demands and filing a counterclaim, he breached the terms of the Settlement Agreement. Accordingly, partial summary judgment will be granted in favor of Magruder on Count II of its Complaint.

The Settlement Agreement authorizes recovery of costs, expenses and attorneys' fees to any party that retains counsel "to resolve any dispute hereunder, including but not limited to the institution of a lawsuit …" (Settlement Agreement at ¶ 24). Because no billing records or supporting declaration have been submitted, the Court will require supplemental briefing on the issue of Magruder's contract damages.

**IV.    Conclusion**

This Court's duty is to determine whether the Board's decision was reasonable, that is, whether it was supported by substantial evidence. Based on the record as a whole, and under any standard of review, the Court concludes that substantial evidence supports the Board's decision to deny Gali's claim for deferred compensation benefits and that a reasonable person could have reached a similar decision. See DaPron, 377 F. Supp. 3d at 958. The Settlement Agreement is clear and unambiguous and reflects the parties' intent to resolve all disputes between them in light of the facts and circumstances at the time of contracting. Likewise, Gali's general release of Magruder

from "all known and unknown claims" is clear and unambiguous and encompasses his claim for deferred compensation benefits. The Court will, therefore, grant Magruder's motion for summary judgment on Count I of the Complaint and First Claim for Relief in the Counterclaim and motion for partial summary judgment on Count II of the Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Magruder Construction Co., Inc.'s Motion for Summary Judgment on Count I of the Complaint and First Claim for Relief in the Counterclaim and Partial Summary Judgment on Count II of the Complaint [28] is **GRANTED**.

**IT IS FURTHER ORDERED** that Magruder's Motion to Take Judicial Notice of the Entire Bank of America Lawsuit Court File [56] is **GRANTED**.

**IT IS FINALLY ORDERED** that within twenty (20) days of the date of this Order, Magruder shall submit its supplemental briefing on the issue of its contract damages. Gali shall have ten (10) days thereafter to file a reply.

Dated this 30th day of March, 2020.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**